[Civ. No. 11840.   Second Appellate District, Division One.—October 11, 1939.]

# R. J. WILLIAMS, Respondent, v. REGA D. FREEMAN et al., Appellants.

W. J. Minville for Appellants.

Albert Nelson and Augustus Castro for Respondent.

YORK, P. J.—Respondent, a licensed real estate broker, on August 29, 1936, entered into an exclusive listing contract in writing with the appellants, a farmer and his wife, by which the latter agreed to pay to respondent the sum of $2,000 if, within thirty days thereafter, he sold upon the

terms therein expressed certain ranch property owned by appellants.

The complaint herein set up two causes of action: The first was based upon the contract for the payment of $2,000 as commission, and the second alleged that on October 6, 1936, an account was stated between the parties for the sum of $1,000 upon which $400 had been paid. The prayer of the complaint was for the sum of $1600.

The answer denied generally and specifically all the allegations of the complaint, and in addition appellants set up an amended cross-complaint for the recovery of $400 which they alleged they paid to respondent in consideration of which he agreed to refrain from bringing suit against them for the sum of $1,000 for commission due for services rendered in connection with the sale of real property.

The court found in favor of respondent broker on his first cause of action. With respect to the second cause of action, it found that no account was stated between the parties, and concluded that respondent was entitled to a judgment for the sum of $1600.

Upon the issues framed by the cross-complaint, it was found, among other things, as follows: "1. That plaintiff was at all times herein mentioned a duly licensed real estate broker . . . that on August 29th, 1936, plaintiff and cross-complainants entered into a certain agreement in writing by which the latter employed said (plaintiff) to sell said real property for the price therein stated and agreed to pay plaintiff the sum of Two Thousand Dollars for his said services in the event said property was so sold by him within thirty days. That on or about the 15th day of September, 1936, plaintiff pursuant to said agreement duly sold said real property and produced the purchasers thereof to said cross-complainants . . . who thereupon refused to sell said real property to said purchasers.. That said purchasers were at all times ready, willing and able to buy said property pursuant to said agreement; that plaintiff performed all the conditions of said agreement on his part and demanded of said (cross-complainants) payment of said Two Thousand Dollars and that neither the whole nor any part of said Two Thousand Dollars has been paid except the aforesaid sum of Four Hundred Dollars which said Four Hundred Dollars was paid by cross-complainants to plaintiff . . . on account

of said (plaintiff's) claim for said Two Thousand Dollars and as a part payment thereof, and that cross-complainants refused to pay the balance of said Two Thousand Dollars remaining unpaid.

"2. That on or about October 6th, 1936 . . . plaintiff . . . demanded of said cross-complainants . . . the payment of the sum of Two Thousand Dollars, then due, owing and unpaid to said (plaintiff) from said (cross-complainants) as a commission on the sale of the real property described in said cross-complaint, which he had sold for them, and upon the refusal of said cross-complainants to pay said Two Thousand Dollars said (plaintiff) informed cross-complainants he would bring suit against them . . . if the same was not paid, and thereupon said cross-complainants paid said (plaintiff) the aforesaid sum of Four Hundred Dollars as a part payment of said indebtedness."

As a conclusion of law based upon its findings of fact, the court found that cross-complainants were not entitled to recover anything as against plaintiff and that the cross-complaint should be dismissed.

■ At the conclusion of respondent's case the court denied appellants' motion for nonsuit as to the first cause of action. It is now maintained by appellants that said motion for nonsuit should have been sustained for the reason that respondent in his testimony on his first cause of action claimed he had secured buyers for the property and that he had earned his commission therefor, after which he testified in support of his second cause of action that an entirely new agreement was made for the payment of $1,000 which was partly executed by the payment to and the acceptance by him of the sum of $400. While it is true that respondent admitted the acceptance by him of the $400, he testified upon cross-examination that it was a payment "on account" of his commission. Appellants' motion for nonsuit was properly denied for the reason that respondent produced substantial evidence tending to establish the allegations of his first cause of action. Moreover, it was later proved by the testimony of appellants that they did not accept the offer of $1,000 in settlement of respondent's claim. It is well settled that "upon a motion for nonsuit, particularly when made at the close of plaintiff's case, all the evidence must be construed most strongly against the defendant. (Citations

of cases.) Every favorable inference, fairly deducible, and every favorable presumption fairly arising from the evidence produced must be considered as facts in favor of the plaintiff. If the evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. All the evidence in favor of the plaintiff must be taken as true, and if contradictory evidence has been given it must be disregarded. (Citations of cases.) . . . On such motion the court . . . has nothing to do with any apparent disagreement as to the facts among plaintiff's witnesses, nor with any conflicts between the evidence brought out on direct and cross-examination. The evidence of the plaintiff which is relevant to the issues is to be given its full probative strength, whether or not it has been erroneously admitted.'' (9 Cal. Jur. 551.)

At the time the motion was presented, it was necessary for the court to consider not only the testimony of plaintiff, but also the testimony of the prospective buyers which was to the effect that they not only were ready and willing to buy, but that they were financially able to do so, all of which evidence tended to establish the allegations of respondent's first cause of action.

■ Appellants also contend that the findings of fact to the effect that ''respondent sold the property in question, or secured purchasers at the times mentioned ready, able and willing to buy, are not sustained by the evidence''.

In order to earn his commission under the terms of the contract of August 29, 1936, it was incumbent upon respondent to produce within thirty days of its date, a purchaser financially able to pay $70,375 for 2,815 acres of farm land upon terms as follows: $20,000 in cash and the balance of $50,375 to be secured by a first mortgage or deed of trust, payable $8,396 annually thereafter until paid in full, with interest on all deferred payments at the rate of five per cent per annum. The record reveals that on or about September 10, 1936, respondent interested Dwight Kuhnle and Ed Borchert in the purchase of the ranch and that on September 28, 1936, the appellants, respondent and the two prospective purchasers all met in respondent's office at which time the appellant Rega D. Freeman refused to carry out the terms of the contract because he wanted to reserve the

oil rights in the said property, although no mention of such reservation was made in the written contract. The testimony of the so-called purchaser Kuhnle was that he had $10,000 cash in bank, farming implements valued between $5,000 and $6,000, and grain on hand of the value of $1800 to $2,000. The testimony of the witness Borchert shows that he was able to purchase for the reason that he had between $2,000 and $3,000 cash in bank, had $2,500 in an open account with the Farmers' Alliance, $2,000 in notes collectible on one day's notice and negotiable securities valued at $16,000 upon which he could secure cash on very short notice.

It appears to be appellants' theory that "the readiness and willingness of a person to purchase property can be shown only by an offer on his part to purchase, and that unless he has actually entered into a contract binding upon him to purchase, or has offered to the vendor, and not merely to the broker, to enter into such contract, he cannot be considered a purchaser."

*Gunn* v. *Bank of California*, 99 Cal. 349 [33 Pac. 1105], the leading case in this state on the subject of performance by a broker, holds that the broker is the procuring cause of a transaction when he has proved that he found a purchaser ready, able and willing to buy the property on the terms fixed, and either that he procured from the person a valid contract binding him to purchase the property upon those terms, *or that he brought the vendor and the proposed purchaser together, so that the vendor might have secured such contract if he desired.* (Emphasis added.)

The contract between appellants and respondent authorized the latter "to act as our agent and to accept a deposit to be applied on the purchase price, and to execute a binding contract of sale on our behalf". As a matter of fact, respondent accepted from one of the prospective purchasers a check drawn to appellants' order for the sum of $100 as a deposit to be applied on the purchase price, but irrespective of this fact, when respondent arranged the meeting between appellants and the prospective buyers, both of whom were financially responsible, as well as ready and willing to purchase the land, he had earned his commission, especially in view of the fact that the vendors refused to consummate the deal because they wished to reserve to themselves the oil rights

in the land of which no mention was made in the written agreement between them and respondent broker.

For the foregoing reasons the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.