JOE NOLAN, DBA NOLAN REALTY CO., BROKER'S LICENSE NO. 1025, APPELLANT, *v.* THE STATE OF NEVADA, DEPARTMENT OF COMMERCE, REAL ESTATE DIVISION, RESPONDENT.

No. 5774

November 4, 1969                    460 P.2d 153

*Foley, Garner & Shoemaker,* of Las Vegas, for Appellant.

*Joseph C. Crawford,* of Las Vegas, for Respondent.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal from a district court judgment affirming a decision of the Nevada Real Estate Advisory Commission suspending appellant's real estate license for three months. We affirm that judgment.

Appellant, a licensed realtor, obtained a multiple listing from Howard K. and Joyce A. West in July, 1965, for sale of their home in Las Vegas. This exclusive agency agreement expired in October and an open listing agreement, which was nonexclusive, was then entered into. On January 10, 1966, Patricia Stevens, another licensed realtor, also obtained an open listing on the same property.

On the evening of January 12, Mrs. Stevens presented two offers to the Wests. One was rejected outright. The other, which was financially complex in that it required an expression of opinion by the realtor of the net return to the sellers, was considered by the Wests.

The same evening, appellant's salesman called the Wests with an offer from a different purchaser, which, among other things, required the "purchaser to apply and qualify for an FHA loan."

The next day, January 13, Mrs. Stevens contacted the Wests regarding her buyer's offer, and after correcting certain information affecting the net return to sellers, Mr. West accepted, and signed an agreement. The following day, Mrs. West accepted the offer and signed the agreement.

On January 15, after appellant was informed of the Wests' acceptance of the offer of Mrs. Stevens' client, he contacted Mr. West, who called at his office to discuss the Stevens offer. Appellant expressed the opinion to Mr. West that the Stevens' offer was not correct and that a greater net return could be realized through appellant's buyer. Appellant urged the Wests to disregard the Stevens' offer and to accept his. Mr. West

expressed concern about a lawsuit with the Stevens' client and the inability of appellant's client to secure the FHA loan. Appellant assured Mr. West that if a lawsuit resulted he would bear the costs of West's defense and if the FHA loan did not materialize he would purchase the West's property personally. Upon these assurances from appellant in writing, West agreed to sell to appellant's purchasers. A lawsuit was commenced which finally resulted in Wests selling to the Stevens purchasers. Appellant received no commission for his effort.

The Real Estate Division of the Department of Commerce of the State of Nevada filed a complaint against appellant in March, 1966, charging him with violating the provisions of NRS 645.630(1), (2), (9), (11), (18), and (19) and also Article 25, Part III, of the Code of Ethics of the National Association of Real Estate Boards which has been adopted by the Real Estate Division of the State Department of Commerce. After a lawful hearing, appellant was found to have violated NRS 645.630(11)[1] and his real estate license was therefore revoked for three months.

That decision was appealed to the district court, which ruled: "The Court is of the opinion that there is evidence in the record to support such a finding and, while the Court might not, if sitting as a Commission and hearing the evidence, have felt justified in taking the action of the Real Estate Commission, this Court cannot say that the Real Estate Commission has abused its discretion as a matter of law. Therefore, the Court has no alternative but to affirm the decision of the Commission."

From that adverse decision, appeal was taken to this court.

The district court limited its decision to "whether there had been an abuse of discretion on the part of the commission in making such decision" as required by NRS 645.760(3). We agree that was proper and so limit our own review. The decisive issue in this appeal is as follows: Was there sufficient

[1]645.630 GROUNDS FOR DISCIPLINARY ACTION AGAINST LICENSEES. The commission shall have the power to suspend, revoke or reissue, subject to conditions, any license issued under the provisions of this chapter at any time where the licensee has, by false or fraudulent representation, obtained a license, or where the licensee, whether or not acting as a licensee, is deemed to be guilty of:

. . .

11. Inducing any party to a contract, sale or lease to break such contract for the purpose of substituting in lieu thereof a new contract with the same principal or different principal, where such substitution is motivated by the personal gain of the licensee.

evidence presented at the hearing before the Nevada Real Estate Advisory Commission to support the Commission's finding that the substitution of contracts in this case was motivated by the personal gain of appellant?

Appellant contends there was no evidence before the Real Estate Commission to support its finding that the substitution of contracts on January 15, 1966, was motivated by his personal gain. He said he had already earned his commission on January 12 when he presented his client's offer to the Wests and stood to make no further gain when he induced the Wests to sell to his client after they had entered into an agreement with Mrs. Stevens' buyers.

It is the law of this state that a broker has earned his commission when he has provided a person who is ready, willing, and able to purchase the property upon the terms and conditions prescribed by the seller in the listing agreement. This is so even if the sale is not completed or the seller refuses to perform. Evans v. Dorman, 81 Nev. 319, 402 P.2d 652 (1965); Lukey v. Smith, 77 Nev. 402, 365 P.2d 487 (1961); Engel v. Wilcox, 75 Nev. 323, 340 P.2d 93 (1959).

Within the general rule, "able" means financially able. Pellaton v. Brunski, 231 P. 583 (Cal.Dist.Ct.App. 1924); Shaw v. Chiles, 71 S.E. 745 (Ga.Ct.App. 1911); See 1 Words and Phrases, *Able,* p. 194. In Walton v. Hudson, 79 N.E.2d 921 (Ohio Ct.App. 1947), the court held that when a broker produces a buyer who does not have all the necessary cash in hand, to prove his buyer *able* to purchase, he must show that at the time the offer was made the buyer had the ability " 'to command the necessary funds to close the deal.' " *Id.* at 924. To do that, the court said that in addition to money in possession and bank credit, consideration should be given to the buyer's " 'assets, credit, financial rating, *enforceable agreements for loans,* and anything else indicating ability or lack of ability on his part to command the requisite funds at the required time.' " *Id.* (Emphasis ours). In Globerman v. Lederer, 117 N.Y.S.2d 549 (App.Div. 1952), the holding was that " 'a proposed purchaser is not able, when he is depending upon third parties who are in no way bound to furnish the funds, to make the purchase.' " See also Pellaton v. Brunski, supra, in which the court said: "Where the purchaser is relying on a loan to make up the amount required to complete his purchase it must appear that the party offering to advance the sum has the financial ability so to do and that he has entered into a binding agreement to furnish the sum, and

evidence of a mere verbal promise by a person, without consideration to do so, is insufficient to show ability in the purchaser to complete the transaction." 231 P. at 584. See also Suhre v. Busch, 120 S.W.2d 47 (Mo. 1938); and Saltzman v. McCombs, 71 Nev. 93, 281 P.2d 394 (1955).

The record before the lower court and this court clearly shows that appellant's buyers had no binding commitment from the FHA when their offer was made to the Wests on January 12. The record does show that appellant's purchasers submitted their application to the FHA on February 2, 1966, the FHA requested further information on February 8, and the loan was approved on February 17. The record also shows that the Wests were so concerned about that matter that appellant agreed in writing to purchase the property himself if his purchasers could not qualify for the loan. Appellant therefore had not earned his commission on January 12 as he contends.

Thus, the evidence does support the finding that appellant was motivated by personal gain, his commission, when he induced a substitution of contracts by the Wests.

Other assignments of error are urged by appellant, but since they were not the basis of the Real Estate Board's disciplinary action against appellant, nor would they change the outcome of the appeal, we decline to discuss them.

Judgment affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.